# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**NICHOLAS CAROSIELLO,**                              Case No. 4:19 CV 409

      Petitioner,                                      Judge Christopher A. Boyko

      v.                                               Magistrate Judge James R. Knepp II

**WARDEN BRANDESHAWN HARRIS,**

      Respondent.                                      REPORT AND RECOMMENDATION

### INTRODUCTION

*Pro se* Petitioner Nicolas[1] Carosiello ("Petitioner"), a prisoner in state custody, filed a Petition seeking a writ of habeas corpus under 28 U.S.C. § 2254 ("Petition"). (Doc. 1). He subsequently filed an Amended Petition. (Doc. 8-1). Respondent Warden Brandeshawn Harris ("Respondent") filed an Answer (Doc. 7) and Amended Answer (Doc. 12). Petitioner has also filed a Motion to Dismiss without prejudice (Doc. 20), which Respondent opposed (Doc. 21), and to which Petitioner replied (Doc. 22). Also pending are Petitioner's Motions for Expansion of the Record (Doc. 15) and Production of the Record (Doc. 16). The district court has jurisdiction over the Petition under § 2254(a). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(2). (Doc. 3). For the reasons discussed below, the undersigned recommends Petitioner's Motion to Dismiss without prejudice (Doc. 20) be GRANTED and the Amended Petition (Doc. 8-1) be DISMISSED without prejudice

---

1. Petitioner's name appears to be spelled "Nicolas". *See, e.g.*, *State v. Carosiello*, 2017 WL 4548327 (Ohio Ct. App.); Doc. 1, at 9; Doc. 8-1, at 10. On the face of both his Petition and Amended Petition, however, it is spelled "Nicholas" and is thus docketed as such in this Court. *See* Doc. 1, at 1; Doc. 8-1, at 1.

## FACTUAL BACKGROUND

For the purposes of habeas corpus review of state court decisions, findings of fact made by a state court are presumed correct and can only be contravened if the habeas petitioner shows, by clear and convincing evidence, erroneous factual findings by the state court. 28 U.S.C. § 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by a state court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530. The Ohio Seventh District Court of Appeals set forth the following facts on direct appeal:

{¶ 2} Appellant is a known drug dealer who kept large amounts of marijuana and cash inside his residence, which is located in Wellsville. (12/29/15 Trial Tr., pp. 726, 892, 965.) On August 11, 2011, four people intended to break into his house to steal his drugs and money. *Id.* at pp. 733, 896, 967. This group of would-be thieves consisted of Holly Carosiello (the victim and Appellant's estranged wife), Jamie Adkins (Holly's brother), Jordan Gainer (Holly's cousin), and Johnny Paroda (Holly's cousin). *Id.* at pp. 896–899, 767. However, when they arrived at Appellant's house, they saw people inside and left.

{¶ 3} The next morning, the group initiated a second attempt to break into Appellant's house. *Id.* at pp. 734. This time Holly was absent and the group was joined by Raymont Bryant, Tonya Sinkbeil and her niece. Jordan knocked on Appellant's back door and entered the house. *Id.* at p. 1214. On opening the door, he encountered Appellant's mother and a large aggressive dog. Jordan identified himself as a friend of Appellant and asked if he was home. When Appellant's mother angrily ordered him out of the house, he left.

{¶ 4} Appellant's mother called him to tell him that someone had entered their house looking for him. Appellant phoned several acquaintances in an attempt to identify this person. Around 4:00 p.m., Johnny called Appellant and told him that Jamie, Jordan, and Raymont had been to his house to steal his drugs and money, and that they would be back. He did not tell Appellant that he was involved.

{¶ 5} Appellant asked Johnny to find out when the thieves planned to return. *Id.* at p. 906. Meanwhile, Appellant called his brother, Tony Carosiello, and his friend, Brian Specht, and asked them to come to the house. *Id.* at p. 742. Brian brought his girlfriend. Appellant's girlfriend, Martina Michael, was also present. Appellant hid his money and moved his drugs deep into a barn on the property. He moved all the cars to a field behind the house. *Id.* at pp. 742, 1094, 1355. Appellant's goal was to create the appearance that the house was empty. Appellant and his friends then

concealed themselves in the field behind the house and waited for the thieves to arrive. *Id.* at pp. 743, 864. Appellant, who was armed with a rifle and a handgun, maintained contact with Johnny. *Id.* at pp. 749, 864, 907–909, 1279–1280. Appellant's mother and stepfather waited inside the house. The stepfather was armed with a gun.

{¶ 6} Appellant instructed Johnny to tell Jamie that he would be out of the house for a few hours and that his mother and stepfather were out of town for a funeral. Johnny continually updated Appellant as to whether and when the thieves would arrive. At some point, Appellant believed that they were not coming, and his friends left. Appellant went inside to watch television with Martina, his mother, and his stepfather.

{¶ 7} Around 9:30 p.m., Johnny called Appellant and told him that the thieves were on their way to the house after all. Appellant told Martina to call Tony and instruct him to stay away from the house, because he knew the thieves would not return if they saw Tony. *Id.* at p. 752. Tony told Appellant that a red Sunfire he believed to be Holly's, and carrying a group of people, passed his car. *Id.* at pp. 753, 1035–1036, 1098. Appellant also texted Brian and told him not to come to the house. Brian texted in reply: "[k]ill those m* * * f* * *ers." *Id.* at p. 871.

{¶ 8} Holly drove past Appellant's house and the thieves determined that the house appeared empty. This group now included Holly, her boyfriend Josh Rudder, Jamie, and Dustin Green. Jamie texted Johnny to ensure that no one was home and Johnny swore that the house was empty. *Id.* at p. 978. Josh stayed in the car and drove off, leaving Holly, Jamie, and Dustin at the house. Dustin stayed on one side of the house as a lookout. Jamie knocked on the back door. When no one answered, Jamie unsuccessfully tried to kick down the door. *Id.* at p. 980. When his efforts failed, he and Holly decided to lift her to Appellant's window, which was above the back door, so that she could climb inside the house. Jamie attempted to push in an air conditioner unit that was sitting in the window. *Id.* at p. 983. At first, he was met with resistance. Then, suddenly, the unit slid smoothly inside the house. While this was occurring, Appellant was waiting in his room, armed with a .22 caliber pistol. *Id.* at p. 1294.

{¶ 9} Once the air conditioner was out of the way, Jamie lifted Holly to the window. *Id.* at p. 984. She had managed to climb partially inside when Appellant fired his gun. The shot hit Holly between her eyes. Jamie saw a flash as Holly fell out of the window and landed on a cement staircase that led to the basement. Appellant then leaned out of his window, firing his gun several times and yelling, "[y]ou robbed the wrong house." *Id.* Jamie tried to get to Holly, but when he saw the back door open, he and Dustin fled as Appellant fired into the backyard. Shortly thereafter, Martina went outside and heard Appellant say, "[o]h, my God, I shot Holly." *Id.* at p. 756.

3

{¶ 10} Martina called Tony and told him, "I think [Appellant] just shot Holly." *Id.* at p. 1100. Shortly thereafter, Tony arrived with his girlfriend Roxanne Lucas and a friend, Michael Johnston. When they arrived, Martina was crying and said, "Holly is dead." *Id.* at p. 1064. Roxanne, who is a nurse, checked Holly and told Appellant to call 911, because she thought she felt a faint pulse. *Id.* at p. 1066. Appellant told his family, "[y]ou can't tell them I shot her. Don't tell them I shot her." *Id.* at p. 761. He also tried to convince his mother and Martina to tell the police that they shot Holly. Appellant was apparently prohibited from being in possession of a gun due to a previous criminal conviction. Shortly thereafter, Tony left, and Appellant and his stepfather began hiding the drugs and putting their guns away. At some point, Appellant's stepfather did call 911.

{¶ 11} The first responder to arrive was Officer Scott Angelo of the Ohio Department of Natural Resources. *Id.* at p. 453. He heard the call on his radio and offered to assist at the scene. He testified that Appellant and his stepfather were outside and Appellant's mother and Martina were inside the house when he arrived. He asked Martina and Appellant's mother to exit the house, since he was under the impression that an intruder may have been inside. Deputy Kevin Shulas was the next to arrive at the scene. Both Officer Angelo and Dep. Shulas testified that Appellant seemed calm and collected and that no one in the family told them that there had been a shooting. *Id.* at pp. 488, 539.

{¶ 12} Appellant initially told investigators that he had heard no gunshots during the encounter. Ultimately, he made four statements to investigators which he later admitted were untruthful. In these statements, he claimed that he saw a man in the house and he assumed that man killed Holly. However, several witnesses came forward and implicated Appellant in the shooting. One of these witnesses was his girlfriend. Sometime later, Appellant's attorney convinced him to give a truthful statement. While he admitted to Det. Allan Young that he shot Holly, he claimed to have wildly fired his shot at a "shadow."

{¶ 13} Appellant was charged with one count of aggravated murder, an unspecified felony in violation of R.C. 2903.01(A), three counts of tampering with evidence, a felony of the third degree in violation of R.C. 2921.12(A)(1), one count of possession of drugs in violation of R.C. 2925.11(A), and three attendant firearm specifications.

{¶ 14} At trial, the state theorized that Appellant lured the would-be thieves to enter the house on the premise that it was empty, with the intent to ambush them once inside. In response, Appellant claimed that he acted in self-defense in accordance with the "castle doctrine." The jury found Appellant guilty on all counts. However, the jury found that the state had not offered adequate proof as to the amount of drugs in Appellant's possession, and his conviction for possession of drugs was reduced to a minor misdemeanor.

4

{¶ 15} On April 10, 2015, the trial court sentenced Appellant to life in prison without the possibility of parole for aggravated murder, 36 months of incarceration on each of the three counts of tampering with evidence, three years of incarceration on one firearm specification and one year for the other two firearm specifications. The court also ordered Appellant to pay a $150 fine and ordered that his driver's license be suspended for possession of drugs. The trial court ordered all of the sentences to run consecutively. Appellant timely appeals his convictions.

*State v. Carosiello*, 2017 WL 4548327, at *1-3 (Ohio Ct. App.) ("*Carosiello I*").

## PROCEDURAL HISTORY

### State Court Conviction

In July 2013, a Columbiana County, Ohio grand jury indicted Petitioner one count of aggravated murder with a firearm specification, three counts of evidence tampering (two with firearm specifications), and one count of drug possession. (Ex. 1, Doc. 7-1, at 5-6); *see also* Ex. 2, Doc. 7-1, at 7-8 (bill of particulars). Petitioner, through counsel, pleaded not guilty. (Ex. 3, Doc. 7-1, at 9).

After a trial, a jury found Petitioner guilty of aggravated murder with a firearm specification, three counts of evidence tampering (two with firearm specifications), and one count of drug possession, but not in the amount listed. (Ex. 4, Doc. 7-1, at 10-19); *see also* Ex. 5, Doc. 7-1, at 20-23 (judgment entry). On April 10, 2015, the trial judge sentenced Petitioner to life in prison without parole for the aggravated murder charge, 36 months on each of the three evidence tampering charges, three years on one firearm specification, and one year for the other two firearm specifications; the sentences were to be served consecutively. (Ex. 6, Doc. 7-1, at 25-28).

### Direct Appeal

Through counsel, Petitioner filed a timely notice of appeal. (Ex. 7, Doc. 7-1, at 29). In his appellate merit brief, he raised two assignments of error:

1. Nicolas Carosiello's convictions were not supported by sufficient evidence in violation of Nick's right to due process of law under the Fifth and Fourteenth

Amendments to the United States Constitution, and Article I, Section 10 of the Ohio Constitution. April 13, 2015 Entry; T.pp. 447-1204.

**Issues presented for review:**

> 1. The State did not rebut the presumption that Nick could use defensive force against an unlawful intruder in his home. Should this Court reverse his convictions because the State failed to rebut the Castle Doctrine presumption?

> 2. The State presented insufficient evidence to support a conviction for aggravated murder. Should this Court reverse his convictions for aggravated murder because the State failed to support his conviction with evidence of prior calculation and design?

2. Nicolas Carosiello's conviction for aggravated murder was against the manifest weight of the evidence, in violation of Nick's right to due process of law under the Fifth and Fourteenth Amendments to the United States Constitution, and Article I, Section 10 of the Ohio Constitution. April 13, 2015 Entry, T.pp. 447-1595.

**Issue presented for review:**

> 1. Was Nicolas Carosiello's conviction for aggravated murder against the weight of the evidence when he acted in self-defense?

(Ex. 8, Doc. 7-1, at 39-60). The State responded (Ex. 9, Doc. 7-1, at 71-84), and Petitioner replied (Ex. 10, Doc. 7-1, at 85-93). On October 5, 2017, the appellate court affirmed the judgment of the trial court. (Ex. 11, Doc. 7-1, at 94-128); *Carosiello I*, 2017 WL 4548327.[2]

Petitioner appealed, *pro se*, to the Ohio Supreme Court. (Ex. 12, Doc. 7-1, at 129-30). In his memorandum in support of jurisdiction, Petitioner asserted two propositions of law:

1. Carosiello's convictions are not supported by sufficient evidence, in violation of his right to due process under the Fifth and Fourteenth Amendments to the U.S. Constitution and Article I, Section § 10 of the Ohio Constitution.

2. Carosiello's conviction for aggravated murder was against the manifest weight of the evidence, in violation of his right to due process under the Fifth and

---

2. On December 14, 2017, Petitioner requested reconsideration. (Ex. 22, Doc. 7-1, at 209-20). The appellate court denied reconsideration on March 5, 2018. (Ex. 24, Doc. 7-1, at 226-31).

Fourteenth Amendments to the U.S. Constitution and Article I, Section § 10 of the Ohio Constitution.

(Ex. 13, Doc. 7-1, at 131-75). The State filed a memorandum in response (Ex. 14, Doc. 7-1, at 176-90), and on March 14, 2018, the Ohio Supreme Court declined to accept jurisdiction of the appeal (Ex. 15, Doc. 7-1, at 191).

State Post-Conviction Proceedings

*First Petition to Vacate*

On January 23, 2017, Petitioner filed a *pro se* petition to vacate or set aside his conviction with the trial court; he requested an evidentiary hearing. (Ex. 16, Doc. 7-1, at 192-94). Therein, he asserted a single claim:

**Statement of constitutional claim:** Deprived of my right to counsel under the Sixth Amendment, U.S. Constitution; Section 10, Article I, Ohio Constitution.

**Short statement of facts supporting the claim**: Failure to call witnesses, failure to interview State and defense witnesses, failure to utilize our private investigator, failure to go to crime scene, failure to conduct investigation, and more.

*Id.* at 193 (capitalization altered). On February 21, 2017, the trial court issued a judgment entry stating that it lacked jurisdiction to consider Petitioner's claims because of the pending appeal. (Ex. 17, Doc. 7-1, at 195).

On August 23, 2017, Petitioner filed a *pro se* notice of appeal and motion for leave to file a delayed appeal with the Seventh District Court of Appeals. (Exs. 18-19, Doc. 7-1, at 197-206). The State opposed. (Ex. 20, Doc. 7-1, at 207). On September 25, 2017, the appellate court overruled Petitioner's motion, stating that "[t]here is no reason to grant a delayed appeal of an interlocutory order that is not final and appealable." (Ex. 21, Doc. 7-1, at 208).

*Second Petition to Vacate*

On April 12, 2018, Petitioner filed a second *pro se* petition to vacate or set aside his conviction; he again requested an evidentiary hearing. (Ex. 25, Doc. 7-1, at 232-37). Therein, he again raised a single claim:

> **Statement of constitutional claim:** I was deprived of my right to effective assistance of trial counsel as provided by the Sixth Amendment, U.S. Constitution; and Article I, Section § 10 of the Ohio Constitution.
>
> **Short statement of facts supporting the claim**: My trial counsel failed to call witnesses, failed to interview State and defense witnesses, failed to utilize the private investigator they had hired with Court funds, failed to hire a bal[l]istics expert; did not request an immunity hearing pursuant to the Castle doctrine; did not collect police reports to establish the victim's pattern of stalking me; did not investigate the crime scene to familiarize themselves with the layout of the house; did not hire an expert witness to determine plausibility of the A/C unit having been pushed into the room and fallen; did not file for change of venue; did not file motion to have allowed the police interview and Grand Jury testimony provided by Rich Lewis, who was an eyewitness at the scene of the crime, but passed away before the commencement of trial.

*Id.* at 233-34. On May 22, 2018, the trial court denied the petition, citing *res judicata*. (Ex. 26, Doc. 7-1, at 238-39).

On June 14, 2018, Petitioner filed a *pro se* appeal to the Seventh District Court of Appeals. (Ex. 27, Doc. 7-1, at 241). In his merit brief, he asserted two assignments of error:

1. The trial court erred in denying Carosiello's post-conviction petition, in violation of his Due Process protections under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section § 10 of the Ohio Constitution.

2. The trial court erred in denying Carosiello's post-conviction petition without a hearing, in violation of his Due Process protections under the Fifth and Fourteenth Amendments to the United States Constitution, and Article I, Section § 10 of the Ohio Constitution.

(Ex. 28, Doc. 7-1, at 245-59). The State filed a responsive brief. (Ex. 29, Doc. 7-1, at 260-66). On June 24, 2019, the Seventh Appellate District affirmed the trial court's denial of Petitioner's post-

conviction petition. *State v. Carosiello*, 2019 WL 2763151 (Ohio Ct. App.) ("*Carosiello II*"). A review of the state court docket reveals Petitioner appealed this decision to the Ohio Supreme Court on August 8, 2019. *See* Docket, *State v. Carosiello*, Case No. 2018 CO 00018 (Ohio Ct. App.), *available at* https://courts.ccclerk.org/benchmarkweb/Home.aspx/Search (last visited Sept. 26, 2019). That matter remains pending. *See* Docket, *State v. Carosiello*, Case No. 2019-1073 (Ohio), *available at* http://www.supremecourt.ohio.gov/Clerk/ecms/#/caseinfo/2019/1073 (last visited Sept. 26, 2019).

**FEDERAL HABEAS CORPUS**

In his Amended Petition, Petitioner raises three grounds for relief before this Court:

**GROUND ONE:** There was insufficient evidence produced at trial to support Petitioner's conviction for aggravated murder, in violation of his Due Process protections under the Fourteenth Amendment to the U.S. Constitution.

**Supporting facts**: Petitioner's home was made a target for a home invasion by a group of individuals led by Petitioner's ex-wife, Holly Carosiello. It was believed that Petitioner was a marijuana dealer and kept stores of marijuana and cash in his residence. Members of the group made unsuccessful attempts to burglarize Petitioner's home on August 11th and August 12th, 2011. Petitioner learned of the two failed burglaries and that the group was planning a third attempt. It was alleged that Petitioner devised a plan to give the appearance that nobody would be home at his residence on the evening of August 12, 2011, which supposedly included having a friend inform the would-be thieves that the home would be empty. In fact, Petitioner was home that evening, along with his mother, stepfather, and his girlfriend. The group of would-be thieves arrived that night and first attempted to break in through the back door. After that was unsuccessful, the group then opened a window above the back door which led into an upper floor bedroom, and then hoisted Holly up to the window. When she was part-way entered through the window into Petitioner's bedroom he fired a single shot, striking Holly in the head and causing her death. At trial, Petitioner challenged that there was insufficient evidence to prove he acted with prior calculation and design, but argued that he was acting in self-defense both of himself and his mother, stepfather[,] and girlfriend, within the provisions of the "castle doctrine."

**GROUND TWO:**     The deficient performance of Petitioner's trial counsel deprived him of his right to effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the U.S. Constitution.

**Supporting Facts:** Petitioner's trial counsel: 1) failed to call witnesses in support of his defense; 2) failed to interview State and defense witnesses prior to trial; 3) failed to utilize the private investigator that counsel had hired with court funds; 4) failed to hire a ballistics expert; 5) did not request an immunity hearing pursuant to the "Castle doctrine"; 6) did not collect police reports to establish the victim's pattern of stalking Petitioner; 7) did not investigate the crime scene to familiarize themselves with the layout of the house; 8) did not hire an expert witness to determine the plausibility of the air conditioning unit having been pushed into the bedroom window and fallen; 9) did not file for a change of venue; 10) did not file a motion to have allowed the police interview and Grand Jury testimony provided by Rich Lewis, who was an eyewitness at the scene of the crime, but passed away before the commencement of trial; 11) failed to object to faulty jury instructions regarding the defense of self, defense of another, defense of business, and defense of residence or vehicle.

**GROUND THREE:** The trial court provided improper instruction to the jury regarding Petitioner's self-defense claim, which deprived him of his right to a fair trial under the Sixth and Fourteenth Amendments to the U.S. Constitution.

**Supporting Facts:** In providing the jury with instruction on Petitioner's affirmative defense of self defense based on the Castle doctrine, the trial court informed the jury that Petitioner had the burden of proof by a preponderance of the evidence. The court failed to instruct the jury as part of Petitioner's affirmative defense of the defense of another, the defense of business, and the defense of residence or vehicle.

(Doc. 8-1, at 5-7).

### STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "dictates a highly deferential standard for evaluating state-court rulings which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (internal citation and quotation omitted). An application for habeas corpus cannot be granted for a person in custody pursuant to a state conviction unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d). Thus, a court may grant habeas relief if the state court arrives

at a conclusion that is contrary to a decision of the Supreme Court on a question of law, or if the state court decides a case differently than did the Supreme Court on a materially indistinguishable set of facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

The appropriate measure of whether a state court decision unreasonably applied clearly established federal law is whether that state adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Williams*, 529 U.S. at 409-11; *see also Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). To obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

### DISCUSSION

Both parties recognize that the Amended Petition (Doc. 8-1) is a "mixed" petition, containing both exhausted and unexhausted claims. *See* Doc. 7, at 9-11, 13, 26; Doc. 17, at 1-2. Petitioner seeks to dismiss the petition without prejudice to permit complete exhaustion of Ground Two. (Doc. 20). Respondent opposes, and argues a stay is more appropriate given the procedural posture of the case. (Doc. 21). For the reasons discussed below, the undersigned recommends the Petition be dismissed without prejudice.

A habeas corpus petition may not be granted "unless it appears that the applicant has exhausted the remedies in the courts of the State." 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-45 (1999). Generally speaking, a federal district court may not grant a writ of habeas corpus on a "mixed" petition, that is, one containing both exhausted and

unexhausted claims. *Harris v. Lafler*, 553 F.3d 1028, 1031 (6th Cir. 2009); *see also Rockwell v. Yukins*, 217 F.3d 421, 422 (6th Cir. 2000) ("Although [the exhaustion] requirement is not jurisdictional, a petition that includes unexhausted claims will ordinarily not be considered by a federal court absent 'unusual' or 'exceptional' circumstances.").

In *Harris*, the Sixth Circuit set forth a district court's options regarding a petition that contains unexhausted claims:

> When faced with this predicament in the past, we have vacated the order granting the writ and remanded the case to the district court so that it could do one of four things: (1) dismiss the mixed petition in its entirety, *Rhines* [*v. Weber*], 544 U.S. [269,] 274 . . . (2005); (2) stay the petition and hold it in abeyance while the petitioner returns to state court to raise his unexhausted claims, *id.* at 275. . . ; (3) permit the petitioner to dismiss the unexhausted claims and proceed with the exhausted claims, *id.* at 278 . . . ; or (4) ignore the exhaustion requirement altogether and deny the petition on the merits if none of the petitioner's claims has any merit, 28 U.S.C. § 2254(b)(2).

553 F.3d at 1031-32.

Ordinarily, district courts dismiss a mixed petition, unless the expiration of the statute of limitations would bar the claims upon the petitioner's return to federal court. *See, e.g.*, *Kozic v. Sloan*, 2017 WL 6806261, at *5 (N.D. Ohio) (collecting cases); *see also Rose v. Lundy*, 455 U.S. 509, 518-19 (1982) (comity requires state courts have the first opportunity to review claims). Here, as explained below, the statute of limitations period would not expire while Petitioner exhausts his state remedies.

The instant Amended Petition contains exhausted claims (Grounds One and Three), and an unexhausted claim (Ground Two). The ineffective assistance of counsel claims in Ground Two, as noted above, are currently pending on appeal of post-conviction relief denial before the Ohio Supreme Court. This appeal, at least as presented to the state appellate court, included an argument that the trial court erred in not granting Petitioner an evidentiary hearing on his ineffective

assistance of counsel claims. *See Carosiello II*, 2019 WL 2763151, at \*7. Relatedly, in his Motion for Expansion of the Record, Petitioner asks this Court to order Respondent to submit 1) the grand jury testimony of Richard Lewis, who passed away prior to Petitioner's trial, 2) the sworn testimony of Brian Specht, and 3) a transcript of the 911 call made by Lewis the night of the shooting. (Doc. 15, at 2). To this Court, Petitioner asserts this evidence will help him establish ineffective assistance of counsel based on the: 1) failure to subpoena witnesses, and 2) failure to move for Mr. Lewis's testimony to be introduced at trial. *See id.*

In his latest filing, requesting dismissal without prejudice, Petitioner accurately notes that "[a] discretionary appeal of the appellate decision denying relief on the issues of his postconviction petition is pending in the Ohio Supreme Court." (Doc. 20, at 1). Respondent opposes, arguing dismissal is improper because he will suffer "plain legal prejudice" under Federal Civil Rule 41(a)(2). (Doc. 21, at 4-6).

"Whether dismissal should be granted under the authority of Rule 41(a)(2) is within the sound discretion of the district court." *Grover v. Eli Lilly & Co.*, 33 F.3d 716, 718 (6th Cir. 1994). Given that the primary purpose of the rule is to protect the non-movant from unfair treatment, the Court must consider the prejudice to the non-moving party before determining whether dismissal is appropriate. *See id.* An abuse of discretion is found "only where the defendant would suffer 'plain legal prejudice' as a result of a dismissal without prejudice, as opposed to facing the mere prospect of a second lawsuit." *Id.* In making that determination, the Court considers "the defendant's effort and expense of preparation for trial, excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action, insufficient explanation for the need to take a dismissal, and whether a motion for summary judgment has been filed by the defendant." *Id.* However, there is "no requirement that each of [those] factors be resolved in favor

of the moving party before dismissal is appropriate," as the "factors are 'simply a guide for the trial judge, in whom the discretion ultimately rests.'" *Rosenthal v. Bridgestone/Firestone, Inc.*, 217 F. App'x 498, 502 (6th Cir. 2007).

The fact that Respondent will be subject to a second lawsuit alone is insufficient to counsel against dismissal. *See Grover*, 33 F.3d at 718; *see also Young v. Warden, Corr. Reception Ctr.*, 2014 WL 3732947, at *2 (S.D. Ohio) ("[T]he prospect of having to litigate a second lawsuit requiring the filing of another return of writ in response to a renewed habeas corpus petition filed by petitioner in the future does not, in and of itself, constitute 'plain legal prejudice'" sufficient to justify the denial of the petitioner's motion."); *Annable v. Mansfield Corr. Inst.*, 2014 WL 667601, at *3 (N.D. Ohio) ("Although Respondent has expended time, money, and resources in producing an Answer/Return of Writ, it is important to note that Respondent was not required to prepare a Reply to a Traverse in this case since Annable sought to dismiss prior to filing a Traverse. Additionally, Respondent did not file any other motions, no discovery was conducted, and no in-person appearances in Court were required, e.g., attending an evidentiary hearing. As such, the first [*Grover*] factor weighs only slightly in favor of Respondent."); *Henderson v. Hall*, 2010 WL 2572698, at *2 (N.D. Ohio) ("The prospect of defending a second lawsuit on identical issues is insufficient reason to deny a motion to dismiss . . . Courts have also rejected the argument that the effort and expense involved in defending a lawsuit is sufficient. Respondents have filed an Answer/Return of Writ and compiled supporting documents to oppose Henderson's petition. While having to repeat this effort may result in a modicum of prejudice, the prejudice to Respondent alone is insufficient to warrant a denial of Henderson's motion.") (internal citations omitted), *report and recommendation adopted*, 2010 WL 2572652. Although the Court recognizes that Respondent has filed his Answer, there is no indication that the dismissal of the case would

14

preclude Respondent from asserting the same arguments in a second action. Indeed, much – if not most – of Respondent's effort and expense will be transferrable to a second action.

Even though Petitioner waited a period of time after initiating this habeas corpus action to file the instant motion, the Court cannot say that he was not reasonably diligent. Indeed, Petitioner noted the unexhausted nature of his second ground for relief more than once, including expressly requesting an extension of time to allow for exhaustion. *See* Doc. 8-1 at 7 (noting appeal is still pending); Doc. 19, at 2 ("Petitioner seeks additional time to permit the exhaustion of the issue to the Ohio Supreme Court."). Petitioner also has offered an explanation of the need to take a dismissal, which is to exhaust his remedies on Ground Two in the state courts. Regardless of whether Petitioner is successful in pursuing that avenue of relief, Respondent will not suffer the type of legal prejudice by dismissal without prejudice that generally is recognized by courts in this circuit. *Rosenthal*, 217 F. App'x at 500 (noting that plain legal prejudice may result when dismissal strips a defendant of an absolute defense, when defendant already has secured a dispositive ruling in his favor, or the law clearly dictates a result in his favor). Nor has Respondent argued that this type of plain legal prejudice will result. Consideration of these factors thus leads the undersigned to conclude that dismissal is appropriate.

In granting a voluntary dismissal, a court must "ensure that the petitioner's ability to present his claims of constitutional violations is not abridged merely because the petitioner has unwittingly fallen into a procedural trap created by the intricacies of habeas corpus law." *Clark v. Tansy*, 13 F.3d 1407, 1409 (10th Cir. 1993); *see also Martin v. Warden, Lebanon Corr. Inst.*, 2014 WL 1271929, at *3 (S.D. Ohio) (quoting *Ortega v. Trombley*, 2007 WL 781878, at *1 (E.D. Mich) (quoting *Clark*, 13 F.3d at 1409)). For the reasons set forth below, this concern is not present in this case.

The AEDPA provides for a one-year statute of limitations during which a prisoner in state custody may file a petition for habeas relief in federal court. 28 U.S.C. § 2244(d)(1). The limitation period begins with any of the following scenarios, whichever is latest:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). Cases become final for purposes of § 2244(d)(1)(A) when the time to file an appeal has expired. *Lawrence v. Florida*, 549 U.S. 327, 333 (2007). This includes the time to petition for certiorari to the United States Supreme Court. *Jimenez v. Quarterman*, 555 U.S. 113, 119 (2009).

Petitioner's conviction became final for purposes of § 2244(d)(1)(A) on June 12, 2018 – 90 days after the Ohio Supreme Court declined to accept jurisdiction of the appeal. *See Jimenez*, 555 U.S. at 119; U.S. Supreme Court Rule 13(1) (a petition for a writ of certiorari from a state court judgment must be filed not later than 90 days after entry of the judgment). The one-year statute of limitations thus would have begun to run the following day, June 13, 2018.

However, in the interim, Petitioner filed a post-conviction petition on April 12, 2018. (Ex. 25, Doc. 7-1, at 232-37). As noted, that petition remains pending on appeal before the Ohio Supreme Court. A properly filed post-conviction petition can serve to toll the statute of limitations in habeas cases. 28 U.S.C. § 2244(d)(2). *See Evans v. Chavis*, 546 U.S. 189, 191 (2006). A state

16

application for post-conviction relief is "properly filed" within the meaning of § 2244(d)(2) "when

its delivery and acceptance are in compliance with the applicable laws and rules governing filings,

such as those prescribing the time limits for filing." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000). State

courts are the final arbiters of whether a state collateral action is considered timely, and thus,

properly filed. *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005).

> The appellate court addressed the timeliness of Petitioner's post-conviction petition:

> {¶19} Technically, the 2018 petition is untimely and Appellant does not make the necessary showing for an untimely or successive petition as set forth in R.C. 2953.23. That said, the 2017 petition was timely, but the trial court did not rule on it because it believed it was without jurisdiction to rule on it. In dismissing the motion for delayed appeal, we agreed with the trial court's decision by indicating the trial court's ruling was interlocutory. Since the trial court did not rule on the 2017 petition after it regained jurisdiction to rule on it, the 2018 petition could be seen merely as a request to rule on the 2017 petition, which was timely.

> {¶20} Admittedly, the 2018 petition does add some claims – venue, ballistics expert, immunity hearing on Castle doctrine, etc. The trial court appears to have ruled on all the claims, including the new ones raised in the 2018 petition. The trial court's ruling does not indicate the petition was untimely or was treated as an untimely petition. In the interest of thoroughness, this court will address all of the arguments.

*Carosiello II*, 2019 WL 2763151, at *4. That is, the state court did not treat the currently-pending

post-conviction as untimely. As such, it is a "properly filed" post-conviction petition that is

currently tolling Petitioner's AEDPA statute of limitations. *See Artuz*, 531 U.S. at 8; *Pace*, 544

U.S. at 417. Petitioner's AEDPA statute of limitations will thus not expire while he fully exhausts

the basis for Ground Two in the state courts. Thus, dismissal will not cause Petitioner to

"unwittingly fallen into a procedural trap created by the intricacies of habeas corpus law." *Clark*,

13 F.3d at 1409.

> Respondent may ultimately be correct in his assertion that Ground Two is meritless. But

AEDPA and interests of comity dictate that this Court should allow the state courts to make a final

determination before it performs its review. *See* 28 U.S.C. § 2254(b)(1)(A); *Rose*, 455 U.S. at 522. In the instant circumstance where Petitioner's statute of limitations has not run (and will not expire while Petitioner completes the exhaustion of Ground Two), the undersigned finds dismissal without prejudice the appropriate discretionary remedy. *See Harris*, 553 F.3d at 1031-32.

### CONCLUSION AND RECOMMENDATION

Following review, and for the reasons stated above, the Court recommends Petitioner's Motion to Dismiss without prejudice (Doc. 20) be GRANTED and the Amended Petition (Doc. 8-1) be DISMISSED without prejudice.[3]


s/James R. Knepp II
United States Magistrate Judge


*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).

---

3. The undersigned also denies without prejudice Petitioner's Motions for Expansion and Production of the Record. (Docs. 15 & 16). Petitioner may re-file them, if necessary, in the event this Report and Recommendation is not adopted, or upon his return to federal court with a new habeas petition after fully exhausting Ground Two.